The trial court's error in this case in the admission of evidence entitles the defendant to a new trial. It does not, as the appellate court held, go even further than the defendant is entitled to a new trial. The parties in this case agree on the central legal principle here, which has been established since the 80s in the U.S. Supreme Court decision in Lockhart, and that is that a new trial is permissible as long as the state sustained its burden of proof at the first trial, and that must include not only the state's properly admitted evidence, but also that evidence that was admitted in error, and also that evidence that was admitted in error. All of that evidence must be viewed in the light most favorable to the state in determining whether a new trial is proper. In this case, the state's evidence included a statement of the six-year-old victim to his treating nurse on the burn unit that the defendant, his stepfather, was the person who had caused his extensive burn injuries. That evidence was powerful and compelling evidence of identity, but the foundation of the state's case was the expert opinion of Dr. Fujara. The testimony was based entirely on the victim's burn and the pattern of those burns, and as she explained in great detail, those burn patterns could only have been the product of the forcible immersion of the victim in extremely hot water. That included two key elements. It included the fact that there were very clear demarcation lines between burned and unburned portions of his skin, and as the doctor explained, that evidence counters an accidental theory because a victim who is free to move at the time his skin contacts the hot water would be expected to flail about and to splash, and as a result of that activity would cause a sort of wavy boundary of the burn injuries. The second key component to her testimony was the pattern of the injuries itself. The victim in this case was burned on both of his buttocks and both of his feet. As she testified, that's not a burn pattern that would easily result from the victim himself of his own volition getting into a hot water. Instead, it was the product of his being placed in the water by someone else and being held there for a sufficient time for his skin to burn. In light of that testimony, the only proper conclusion and the one that the judge here rationally reached was that the victim's burn injuries were from the forcible immersion. The question at that point was then who was the one who caused those injuries, and as I've noted, the hearsay testimony here of the victim identifying the defendant was certainly more than sufficient to show that, but that was further corroborated by circumstantial evidence that the defendant was the sole adult and caretaker at the time the injuries occurred, and his behavior was highly suspicious in leaving the victim to suffer for 12 hours or more after the injuries had occurred. As the medical testimony established, these were extremely painful injuries. The victim would have been, at the time, unable to sit because of the involvement of his buttocks, and he would have been unable to stand as a result of the injuries to his feet. There's no plausible explanation that the defendant was not aware of these injuries at the time they occurred, yet he took no steps at all to obtain medical treatment for injuries that would ultimately result in inpatient care for the victim for more than a month. In addition to that, the defendant ultimately lied when he did take the victim to the emergency room. He gave a false name and a false relationship to the victim, and also a false story about the victim having bed-in-the-care babysitter at the time of his injuries. Because the state's evidence in this case was so compelling in establishing both the method of the injuries and the identity of the person who caused them, the trial judge's guilty verdict in this case was rational, and the people should be permitted to attempt again at a new trial to prove the defendant's guilt either through the same evidence under a different theory or through different evidence such as from the victim himself identifying the defendant. If the Court has no questions, we would ask that this Court reverse that portion of the appellate court's judgment barring the retrial. Seeing no questions, thank you. Mr. Zeid. Good morning, Your Honors. May it please the Court? Good morning. My name is Brett Zeid from the State Appellate Defender's Office, and I represent Gerald Drake. The state's evidence in this case, even viewed in the light most favorable to the state, does not prove beyond a reasonable doubt that Gerald forcibly immersed J.H. in scalding bath water. The evidence instead shows that this was an accidental burning, or at the most, Gerald was negligent in his actions, but it doesn't show that he had the specific intent to forcibly immerse J.H. in the tub. Mr. Zeid, in its reasonable doubt analysis, the appellate court stated, here's the quote, J.H.'s erroneously admitted hearsay statement was the only piece of evidence placing defendant in the bathroom where the injury occurred. The state provided no other identification evidence. How is that statement indicative of viewing the evidence in the light most favorable to the state? Well, to answer your question, as the state argues in its brief and also Justice Gordon's dissenting opinion, they allege that there's this contradiction between the appellate court's harmless error analysis and its insufficiency of the evidence analysis regarding that hearsay statement. But there's no contradiction between those two findings, and that's because the state's overall lack of evidence of J.H. in the bathroom and Gerald's guilt was so lacking. Well, we're required to consider improperly admitted evidence along with the other evidence, right? Of course. So why did the appellate court believe more identification evidence was needed? Their statement indicates that they believe that the one I.D., although improperly admitted, was not enough. I'm having difficulty seeing how that's looking at it in the light most favorable to the state. It seems to say that the appellate court seems to be saying more identification was necessary. Well, I think it also goes to the weakness of that statement, the hearsay statement itself. Just looking at the statement from Nurse Roxas that J.H. allegedly had hot water poured on Gerald's face, I don't think that's true. I don't think that J.H. had hot water poured on his buttocks by the nurse is not compelling evidence to show that Gerald had the specific intent to forcibly immerse him, as the appellate court noted. That statement itself is completely contradictory to the state's theory of the case. Dr. Kuhar herself testified that J.H. could not have sustained these burns by some other point of water. The appellate court also noted that Dr. Kuhar didn't speak to any of J.H.'s family members, and the statement itself is just suspicious, because it doesn't sound like something that a six-year-old child would say to a nurse. Her specific testimony regarding the statement was that, I quote, he said, nurse, I'm going to tell you something. My dad was the one who poured hot water on my buttocks while I was in the tub. She didn't ask for any other details regarding the size of the cup or any of the other circumstances about what happened, but critically, that's completely contradictory to the state's theory of the case here, and that's that Gerald forcibly immersed J.H. into the tub. But isn't the evidence, as far as that, how we consider it, when we consider even evidence that should not have been admitted, isn't the importance of the statement the fact that it is a piece of evidence that puts the defendant in the bathroom at the time, as to the exclusion of anyone else? Yes, Your Honor, and that's why the court was able to find that it's harmless error analysis. Because of that evidence coming in, the court couldn't say that the trial court, that specific evidence, prompted its guilty final. But again, because of the overall lack of evidence, yes, that evidence put him in the bathroom, but that's it. It didn't corroborate their theory of how this injury occurred. And the statement, as I argue, the statement itself is suspicious. Wasn't he the only adult in the house? He was the only adult in the house. He was taking care of nine kids at the time. But isn't that a piece of evidence that should properly be considered? Yes, it is, Your Honor. We concede that Gerald did have a consciousness of guilt here. The evidence, it's not clear exactly when Gerald became aware of these injuries and how long it took for him to get to the hospital. There was testimony that he told the DCFS investigator, Mr. White, that he sent J.H. and his older brother, D., to the bathroom to clean themselves up after they had wrestled around and got some feces on themselves because of the baby's diaper. What's the right word? There was feces on the ground. But again, there's still no evidence that, yes, there is this consciousness of guilt, but that's collateral evidence. That's not specific evidence that he intentionally immersed J.H. in the water. And under these circumstances, it would be perfectly reasonable for a parent in Gerald's position to have a consciousness of guilt. The six-year-old child suffered severe burns on his watch. So he would have a consciousness of guilt whether it was an accident, whether he was negligent in sending J.H. and his older brother to the bathroom. He'd still have that consciousness of guilt because this child was burned. So the victim's injuries were caused by a forceful immersion into scalding water, right? And the victim told the nurse the defendant burned him. So those are three pieces of evidence, just looking at the evidence in the light most favorable to the state. But that is insufficient? What more was required? Well, Your Honors, I guess the critical thing here is the fact that there was uncontroverted evidence presented that a few days before these injuries occurred, that a water heater was incorrectly installed. And when the cold water spigot was turned, 161 degrees scalding water came out of the tub. That's uncontroverted. But does that change anything when we view the evidence in the light most favorable to the state? Sure it does, because none of that evidence is even viewed in the light most favorable to the state. It does not prove that Gerald was the person. Two things. It doesn't prove that J.H. was forcibly immersed. And two, it doesn't show that Gerald was the one who did it. This Court does not have to credit Dr. Kimpara's testimony, because it was not based on all the relevant information here. As the appellate court noted, she didn't speak to any of J.H.'s siblings or family members before making her opinion. She did not know. The evidence doesn't show how J.H. got into the tub. It doesn't show who turned on the water spigots. It doesn't show how long he was in the tub, and we honestly do not know how hot the water was. The evidence does show that there were differences between the burns to the tops of his feet and to his buttocks. But the evidence also shows that there was not this true donut pattern on his buttocks. Excuse me, did you say there was or wasn't? There was not. There was not the donut pattern. So there are so many unanswered questions regarding what exactly happened in the bathroom. We do know for a fact that there were these faulty pipes and that scalding hot water came out of the cold water spigot. We know that J.H. was sent to take a bath with his older brother, D. But then we don't know what happened. The state didn't present any evidence as to what actually happened. All we have there is then the Secure State Statement from Nurse Brooks that occurred more than a week after the incident. But that statement itself, yes, it put J.H. in the bathroom. But it also did not support the state's theory of the case that he was forcibly immersed in their own expert opinion. She specifically testified that these injuries could not have been caused that way by someone pouring hot water on his buttocks. And a consciousness of guilt, again, that is evidence, but that's not specific evidence that he intended to forcibly immerse him. She didn't, the doctor testified that it was inconsistent, the injuries were inconsistent with, for example, there's a tub of water and you put your feet in it. The injuries were inconsistent with that. That's true, Your Honor, but we don't know, again, there's no evidence as to how J.H. got in the tub. We don't know whether his older brother told him to get in the tub and the older brother turned on the water. We don't know whether J.H. turned on the water. We don't know that the water in the tub could have been fine initially and then either J.H. or his brother then turned the cold water on, with maybe hot water going onto his feet and then him getting out. We don't know any of those things, and that's the state's burden to prove how these injuries occurred. Their theory was that he was forcibly immersed, but there's no history, there were no marks on his body, on J.H.'s body. There's no history of prior abuse to J.H. or any of his other siblings. All the siblings were interviewed, and there's no evidence presented by the state that they said anything that pointed to Gerald as to him forcibly immersing J.H. into the tub. The dissent points out that in the majority opinion of the appellate court, they said that the hearsay evidence was not harmless error, that it was key to the conviction, but yet when evaluating for the sufficiency of the evidence, including the hearsay evidence, they say there's not enough evidence. Well, that goes back to my point about those two findings not being consistent, and that's due to the overall lack of evidence showing that Gerald had the specific intent to forcibly immerse J.H. into the tub. That hearsay statement was the only thing that put him into the bathtub, so the court found that in a harmless error analysis, it couldn't say that that's what prompted the trial court to find Gerald guilty. But looking at the sufficiency of the evidence, even with that hearsay statement, because of the problems with that statement, one being it was just a problematic statement to begin with, two, it was contradicted by Dr. Kimhara's testimony that pouring a cup of water on his buttocks couldn't have caused these injuries. It was the result of forcible immersion. And then looking at Dr. Kimhara's opinion, again, that's based on incomplete information. She didn't interview any of the people in the house at the time that this injury occurred. So the question for this court, Your Honor, is not whether Gerald is a bad parent or even a negligent parent. A negligent parent is whether the state's evidence, viewed in the light most favorable to the state, proved beyond a reasonable doubt that Gerald was the one who forcibly immersed J.H. into the tub. So even if this court considers Dr. Kimhara's testimony, that still doesn't prove that Gerald was the one who forcibly immersed him, because there was an older brother who was sent to the bathroom at the time, and there were eight other people in the house at the time, granted at various ages. But still, it goes back to a reasonable doubt that Gerald was forcibly immersed J.H. into this cup of water. If this court has no other questions, Gerald respectfully requests this court to affirm the appellate court's decision of reversing this aggravated battery conviction outright, because sending it back for another trial would violate this right against the bill of judgment. Thank you. I think my opponent's argument included a couple of misstatements. First, I think there was a misstatement of the law when the defendant said that the court does not need to credit Dr. Kimhara's testimony. That's inaccurate. For purposes of this analysis of the sufficiency of the evidence, the court must construe all of it in the light most favorable to the people. As part of that, the court does need to credit Dr. Kimhara's testimony for expert opinion as to how these injuries occurred. But there was also a misstatement of the record as to the donut pattern of the injury on the child's buttocks. We did quote the testimony in the reply brief at pages 2-3, and it's in the record at pages 37-38, where Dr. Kujara actually testified that she did descend a donut pattern in the burn, and she did explain that it was not as pronounced as it might have been if the water temperature had been lower, but there was definitely a pattern that she could see and that she identified on the photographs. Also, in viewing the light most favorable to the people, the court can consider the child's hearsay statement as essentially consisting of a couple of different assertions. The key assertion here was that the six-year-old identified his stepfather as the person in the room with him at the time he was burned. We would fully concede that his description of the mechanism of injury was not consistent with the forensic testimony, but the child's misunderstanding of how the defendant actually caused the burn injury is an understandable mistake by a child and should not impact this court's willingness to afford the remainder of his testimony, including the identification, the weight that it's really entitled to in the sufficiency analysis. For those reasons, we would ask the court to reverse, in part, the appellate court's judgment barring a retrial. Thank you. Case number 123734, People v. Freak, will be taken under advisement as agenda number six. Ms. O'Connell, Mr. Zeeb, we thank you for your arguments. You are excused.